USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/16/05

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

IN RE ADORN GLASS & VENETIAN
BLIND CORP.,

      Debtor.

------------------------------------x

05 Civ. 1890 (RJH)

**MEMORANDUM**
**OPINION AND ORDER**

Abraham Herbst seeks an interlocutory appeal from an order issued in the Chapter 11 bankruptcy proceeding, *In re Adorn Glass & Venetian Blind Corp.*, Case No. 03-14423 (CB) (Bankr. S.D.N.Y. 2003) (Blackshear, J.), which denied his motion to dismiss the bankruptcy proceeding as having been filed in bad faith. Herbst is a 40% shareholder in Adorn Glass & Venetian Blind Corp. ("Adorn") and argues on appeal that Earl Brustowsky, who owns the remaining 60% of Adorn shares, was not authorized to file a petition in bankruptcy on behalf of the Company. Adorn contends that the appeal should be dismissed because (i) it is interlocutory in nature, and Herbst failed to obtain leave pursuant to 28 U.S.C. § 158(a)(3); and (ii) even if the Court construes the notice of appeal as a motion for leave to appeal, it should not be granted because the requirements of 28 U.S.C. § 1292(b) have not been met.

The Court agrees, and therefore denies leave to appeal.

## BACKGROUND

The following facts are taken from the record on appeal and, unless otherwise noted, are not in dispute. Prior to filing for Chapter 11 protection, Adorn was engaged in the business of selling and installing glass doors and windows for nearly forty years. Adorn was founded by Brustowsky who was its sole shareholder until 1988. Herbst was

1

hired by Adorn in 1980 and by 1988 was the "Manager" with responsibility for day-to-day operations. (R. 9, Tr. 26:14)

Pursuant to a stock purchase agreement dated February 15, 1988, (the "Agreement" R. 6, Ex. A), Brustowsky transferred a 40% interest in the company to Herbst. The operative terms of the Agreement provide that Brustowsky will no longer devote full time to the operation of the company and that Herbst "shall be responsible for all personnel relations, bookkeeping, production, purchasing, selling, installation and any other matters relating to the operation of the business." (*Id.* ¶ 7, 8.). The Agreement further provides that the Board of Directors shall consist of the two shareholders and that Brustowsky shall be President and Herbst shall be Vice President, as long as they are shareholders. (*Id.* ¶¶ 17–19). With respect to control of the company, the parties agreed as follows:

> Decisions shall be made by each shareholder for his areas of responsibility. For decisions that necessitate the involvement of both parties, should there be any disagreement between the parties, the Seller's [Brustowsky's] decision shall prevail.

(*Id.* ¶ 11). Finally the Agreement provides that all stock certificates shall bear a legend reciting that shares are held subject to the terms and conditions of the Agreement. (*Id.* ¶ 21). None of the provisions of the Agreement were incorporated in the company's Certificate of Incorporation or its By-Laws.

Several years after the Agreement was signed Herbst and Brustowsky discussed the possibility that Herbst would purchase the company outright. Although it is unclear precisely how far those negotiations advanced, Brustowsky contended that the parties reached a purchase agreement, and in October 2002 commenced a civil action in New York State Supreme Court against Herbst for breach of contract. Brustowsky's state

2

claim, captioned as *Earl Brustowsky, et al. v. Abraham Herbst, et al.*, Index No. 123313/02 (N.Y. Sup. Ct. 2002), was dismissed in May or June 2003, allegedly because Brustowsky "fail[ed] to comply with [a] [c]ourt [o]rdered deadline to proceed with trial". (Appellant's Memo. 6).

On June 19 and June 25, 2003, Brostowsky and Herbst, accompanied by counsel, held meetings regarding Adorn. (R. 9, Tr. 34–36, 58–59). The parties disagree as to whether either meeting constituted a meeting of the board of directors. However, on July 9, 2003, Brustowsky executed a "Corporate Resolution" stating that:

> [t]he undersigned is the President of Adorn . . . and is authorized to make this certification. The undersigned certifies that on June 18, 2003 and June 25, 2003, Special Meetings of the Board of Directors were regularly and duly held at [Adorn's offices]. . . . At said meetings, a resolution was passed, as follows: "RESOLVED that the President by and hereby is individually authorized to file on behalf of [Adorn] an application under Chapter 11 of the Bankruptcy Code and to take all steps necessary and proper for the filing of said application, including the retention of [counsel] . . . for that purpose."

(R. 6, Ex. C). The next day, on July 10, Brustowsky caused Adorn to file a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

On July 17, 2003, Herbst filed a motion to dismiss the Bankruptcy Case, arguing that (i) "special meetings" of Adorn's Board were never held; and (ii) he did not otherwise consent—and indeed expressly objected—to the bankruptcy filing. On this basis, Herbst claimed that the petition was filed in "bad faith", and should therefore be dismissed pursuant to 11 U.S.C. § 1112(b). Brustowsky opposed the motion on the grounds, *inter alia*, that the June meetings were directors' meetings and that, despite Herbst's objection, he had the authority under the Agreement to make the decision to file a petition. On January 6, 2004, a trial was held on Herbst's motion. On December 14, 2004, after an unsuccessful mediation effort, the Bankruptcy Court issued an order

3

denying the motion and directing that a trustee be appointed. *In re Adorn Glass & Venetian Blind Corp.*, Case No. 03-14423 (CB), slip op. (Bankr. S.D.N.Y. December 14, 2004) (the "Order").

Herbst now appeals that order.

## DISCUSSION

Appeals from cases originating in the bankruptcy courts are governed by § 28 U.S.C. § 158, which vests district courts with appellate jurisdiction over bankruptcy court rulings. 28 U.S.C. § 158;[1] *Bank Brussels Lambert v. Coan*, 176 F.3d 610, 618 (2d Cir. 1999). Although "final orders of a bankruptcy court may be appealed to the district court as of right, 28 U.S.C. § 158(a)(1), appeals from non-final bankruptcy court orders may be taken only 'with leave' of the district court." *In re Orange Boat Sales*, 239 B.R. 471, 473 (S.D.N.Y. 1999); *see also* Fed. R. Bankr. P. 8001(b);[2] 28 U.S.C. § 158(a)(3). Here, both parties agree that the Order was not "final," which means that Herbst was required to obtain leave before bringing this appeal. 28 U.S.C. § 158(a)(3); *Americare Health Group, Inc. v. Melillo*, 223 B.R. 70 (E.D.N.Y. 1998) (order denying debtor's motion to dismiss nondischargeability complaint was not a final order); *In re MacInnis*, 235 B.R. 255, 262 (S.D.N.Y. 1998).

Having failed to do so, Herbst now asks the Court to treat his notice of appeal as a motion for leave to appeal pursuant to Rule 8003(c) of the Federal Rules of Bankruptcy Procedure. Rule 8003(c) states, in pertinent part:

---

[1] 28 U.S.C. § 158(a) provides, in part: "The district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders, and decrees . . . and, (3) with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title...." 28 U.S.C. § 158(a).

[2] Federal Rule of Bankruptcy Procedure 8001(b) requires an appellant to file "a notice of appeal . . . accompanied by a motion for leave to appeal" in order to appeal an interlocutory order of the bankruptcy court, such as a denial of a motion to dismiss a bankruptcy petition. Fed. R. Bankr. P. 8001(b).

4

> (c) Appeal improperly taken regarded as a motion for leave to appeal
>
> If a required motion for leave to appeal is not filed, but a notice of appeal is timely filed, the district court . . . may grant leave to appeal or direct that a motion for leave to appeal be filed. The district court or the bankruptcy appellate panel may also deny leave to appeal but in so doing shall consider the notice of appeal as a motion for leave to appeal.

Fed. R. Bankr. P. 8003(c). Because the Court concludes that leave should be denied, *see infra*, it will treat Herbst's appeal as an application for leave to appeal. *See In re Holly Flor*, 79 F.3d 281, 283 (2d Cir. 1996) (a district court has jurisdiction to hear bankruptcy appeals not only from orders that are final, but also from orders that are non-final if taken "with leave of" the district court); *In re MacInnis*, 235 B.R. at 262 (noting that leave to appeal can be granted by district courts—as opposed to the bankruptcy court from which appeal is taken—in the first instance).

Neither the Bankruptcy Code nor the Federal Rules of Bankruptcy Procedure provide standards for district courts to follow in determining whether to grant leave to appeal an interlocutory order. Without firm guidance, the majority of courts in this district simply apply the analogous standard for certifying an interlocutory appeal from a district court order, which is set forth in 28 U.S.C. § 1292(b). *See, e.g., Urban Retail Props. v. Loews Cineplex Entm't*, 2002 WL 535479, at *4 (S.D.N.Y. Apr. 9, 2002) ("The standard for determining whether leave to appeal from an interlocutory bankruptcy order should be granted ... is given by 28 U.S.C. § 1292(b), which governs interlocutory appeals from the district courts to the courts of appeal."); *In re Alexander*, 248 B.R. 478, 483 (S.D.N.Y. 2000); *In re MacInnis*, 235 B.R. at 263. This Court will do likewise, keeping in mind that "only exceptional circumstances will justify a departure from the

5

basic policy of postponing appellate review until after the entry of a final judgment." *Flor v. Bot Fin. Corp.*, 79 F.3d 281, 284 (2d Cir. 1996).[3]

As noted, those circumstances are set forth in 28 U.S.C. § 1292(b), which provides that leave should only be granted if the order being appealed (1) "involves a controlling question of law"; (2) "as to which there is substantial ground for difference of opinion"; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). These three requirements are conjunctive, and should be carefully applied. *See Westwood Pharm., Inc. v. Nat'l Fuel Gas Dist. Corp.*, 964 F.2d 85, 89 (2d Cir. 1992) (district courts should "exercise great care in making a [Section] 1292(b) certification").

On appeal in this case, Herbst would claim that Judge Blackshear erred in failing to dismiss Adorn's Chapter 11 case pursuant to Section 1112(b) of the Bankruptcy Code. Under Section 1112(b), bankruptcy courts "may convert a [Chapter 11] case . . . to a case under Chapter 7 . . . or dismiss [the] case . . ., whichever is in the best interest of creditors and the estate, for cause." 11 U.S.C. § 1112(b). Section 1112(b) contains a nonexhaustive list of ten "causes," including:

> (1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation; (2) inability to effectuate a plan; (3) unreasonable delay by the debtor that is prejudicial to creditors; (4) failure to propose a plan under section 1121 of this title within any time fixed by the court; (5) denial of confirmation of every proposed plan and denial of a request made for additional time for filing another plan or a modification of a plan; (6) revocation of an order of confirmation under section 1144 of this title, and denial of confirmation of another plan or a

---

[3] It is worth noting that a minority of district courts have eschewed rigid adherence to the Section 1292(b) factors when considering interlocutory appeals from bankruptcy rulings pursuant to 28 U.S.C. §158(a)(3). *See, e.g., Mishkin v. Ageloff*, 220 B.R. 784, 792 (S.D.N.Y. 1998) ("Given that section 158(a)(3) leaves the question of whether to grant leave to appeal to the discretion of the district court, it seems to me that there is nothing *per se* inappropriate about a district court's using the criteria in section 1292(b) to inform that discretion. Rather, I hold that based upon the unique facts of this case, the criteria in section 1292(b) should not be adopted and that leave should be granted.").

6

> modified plan under section 1129 of this title; (7) inability to effectuate substantial consummation of a confirmed plan; (8) material default by the debtor with respect to a confirmed plan; (9) termination of a plan by reason of the occurrence of a condition specified in the plan; or (10) nonpayment of any fees or charges required under chapter 123 of title 28.

11 U.S.C. § 1112(b).

The crux of Herbst's appeal is that dismissal was appropriate for a reason not on this list, namely, because the petition was filed in "bad faith." To support this position, Herbst would argue that Judge Blackshear ignored "unambiguous documentary evidence," and "uncontroverted testimony" that Brustowsky "did not have authority to commence the Chapter 11 case" without Herbst's approval; Herbst would also claim that Brustowsky knew he did not have authority to file the petition, and manufactured a "false 'Corporate Resolution'" in an effort to deceive the bankruptcy court. (Appellant's Memo. 2). According to Herbst, "established case law makes clear" that these facts would prove "abject bad faith," and therefore "cause" for dismissal pursuant to 11 U.S.C. § 1112(b). (*Id.* 3).

Having reviewed the issues to be considered on appeal, as well as the "established case law" to which Herbst refers, the Court finds that the question on appeal—whether Adorn's petition was filed in "bad faith"—is not a "controlling question of law" over which there is a "substantial ground for difference of opinion." To begin, the question on appeal would depend critically on factual determinations made by the bankruptcy court. Indeed, Herbst's bad faith claim is based almost entirely on the contention that Brustowsky lacked the authority to file the bankruptcy petition. (*See, e.g.*, Appellant's Memo. 22). As the Bankruptcy Court noted, resolution of that issue raises several factual questions:

7

> The determination as to whether ... Brustowsky had the authority to file a bankruptcy petition is a *fact-sensitive* inquiry that is based in part on the following factors: (1) whether Adorn is the type of "corporation" that requires the board of directors to follow corporate formalities in order to take specific actions on behalf of the company, (2) whether Adorn is a "closely held corporation," and therefore does not hold itself or its shareholders/directors to the rigors imposed by corporate formalities with respect to any issue; and (3) whether Paragraph 11 of the Agreement purports to give ... [Brustowsky] a "voting advantage" over ... [Herbst, therefore] obviating the need for ... [Herbst's] consent ... [when] act[ing] on behalf of the corporation.

(Order 9) (emphasis added).

Although the Order does not go into detail, it is clear that Judge Blackshear considered those factors in denying Herbst's motion concluding that even if Brustowsky failed to follow all corporate formalities, this did not constitute bad faith and that dismissal would needlessly promote "form over substance." (*Id.*) An appeal of this conclusion would turn heavily on questions of fact, which counsels against granting leave. *See Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 631 (2d Cir. 1991) ("Where the controlling issues are questions of fact ... the federal scheme does not provide for an immediate appeal solely on the ground that such an appeal may advance proceedings in the [court below].") (citing *Chappell & Co. v. Frankel*, 367 F.2d 197, 200 n.4 (2d Cir. 1966)).

But even were the appeal to turn solely on questions of law, the Court concludes that there is not "a substantial ground for a difference of opinion" on the issue of whether the Bankruptcy Court abused his discretion in declining to dismiss under § 1112(b) of the Bankruptcy Code. *See In re Gusam Rest. Corp.*, 737 F.2d 274, 277 (2d Cir. 1984) (bankruptcy court's determination under § 1112(b) is reviewed for abuse of discretion).

8

In deciding whether there is a "substantial ground for a difference of opinion," the fact that there may be disagreements among courts outside the Second Circuit or that an issue "is a question of first impression" within the Circuit is insufficient. *See Flor*, 79 F.3d at 284; *Colon v. BIC USA, Inc.*, 2001 WL 88230, at *2 (S.D.N.Y. Feb. 1, 2001). Rather, the legislative history of Section 1292(b) indicates that to satisfy this prerequisite there must be "substantial doubt" that the district court's order was correct. S. Rep. No. 85-2434, at 3 (1958), *as reprinted in* 1958 U.S.C.C.A.N. 5255, 5257. To determine whether there is a "substantial doubt," a court must examine "the strength of the arguments in opposition to the challenged ruling." *In re Flor*, 79 F.3d at 284 (citation omitted).

As noted, the issue raised by Herbst on appeal is whether the bankruptcy petition was filed in good faith. Although "bad faith" can constitute "cause" for dismissal under Section 1112(b), the concept of bad faith has limited application in bankruptcy law— indeed, a filing is made in bad faith only "[w]hen it is clear that, from the date of filing, the debtor has no reasonable probability of emerging from the bankruptcy proceedings and no realistic chance of reorganizing," or when there is no subjective intent to reorganize. *In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1310 (2d Cir. 1997).

The Second Circuit has cited with approval a list of eight factors it considers "indicative" of bad faith:

> (1) the debtor has only one asset;
> (2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;
> (3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;
> (4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;

9

- (5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;
- (6) the debtor has little or no cash flow;
- (7) the debtor can't meet current expenses including the payment of personal property and real estate taxes; and
- (8) the debtor has no employees.

*Id.* at 1311 (citing *Pleasant Pointe Apartments, Ltd. v. Kentucky Hous. Corp.*, 139 B.R. 828, 832 (W.D. Ky.1992)). At least one other court in this district has identified a ninth factor, namely, whether the debtor made misrepresentations in its petition. *In re MacInnis*, 235 B.R. at 262. It is on this ninth factor, and Judge Scheindlin's decision in *In re MacInnis*, that Herbst would base his appeal.

Having reviewed that decision, the Court finds that it does not raise substantial doubt as to whether the Bankruptcy Court abused its discretion. In *In re MacInnis*, the court found that a debtor filed a petition in bad faith, and therefore concluded that the bankruptcy court abused its discretion in not finding "cause" to dismiss the action, where the "bad faith" was based on a host of factors, several of which were ignored by the bankruptcy court: (1) the debtor possessed a single asset that was the subject of a two-party dispute; (2) the debtor used the threat of bankruptcy as a tactic to pressure settlement of the two-party dispute; (3) there were few other creditors, and their claims were *de minimus* compared with claims of the parties fighting over the single asset; (4) the debtor had no employees, minimal cash flow, and no apparent income to sustain a plan of reorganization; (5) the debtor demonstrated no intention of rehabilitation, disobeyed court orders, and otherwise failed to file a reorganization plan by a set date; and (6) the debtor made misrepresentations in his Chapter 11 petition. *In re MacInnis*, 235 B.R. at 261–62.

Few, if any, of these factors are present here. In particular, there is no evidence that Adorn (i) possessed a single asset; (ii) used the bankruptcy filing to force a settlement of a "two party dispute"; (iii) had few creditors other than the party involved in the dispute; (iv) had no employees, cash flow, or reorganization plan; or (v) failed to demonstrate a reorganization plan, or otherwise follow court orders. To the contrary, Adorn has "a forty-year . . . reputation and . . . solid client base," has filed a reorganization plan, and has several significant creditors, including JPMorgan Chase Bank. (*See generally* Order 11). In contrast to the debtor in *In re MacInnis*, Adorn is, as Judge Blackshear found, a company that may "truly benefit from reorganization." (*Id.*)

At best then, Herbst is left with his contention that Brustowsky made misrepresentations in the petition regarding his authority to act on behalf of Adorn. Brustowsky's authority, however, was firmly rooted in the Agreement. While inartfully drafted—perhaps not surprising for a two-person business—its intent appears unambiguous: for actions requiring approval by both parties, Brustowsky's decision prevails in the event of a disagreement. (R. 6, Ex. A ¶ 11). There can be little doubt that any major corporate action, including the filing of a bankruptcy petition, is the type of decision that would ordinarily require joint action either by the vote of directors at a board meeting or by shareholder consent. N.Y. Bus. Corp. Law § 701, 615 (McKinney 2003); *Regal Cleaners & Dyers, Inc. v. Merlis*, 274 F.915, 916 (2d Cir. 1921). This being said, it is also the case that shareholders of a closely held corporation may agree to adopt voting agreements that place control of the corporation directly in the hands of one shareholder, in this case Brustowsky. N.Y. Bus. Corp. Law § 620(a)(b). Such an arrangement should have been put in Adorn's certificate of incorporation. *Id.* However, as between shareholders of a close corporation, New York courts will enforce a

11

shareholders agreement even though corporate formalities necessary to implement the agreement have not been undertaken. *Zion v. Kurtz*, 50 N.Y.2d 92 (N.Y. 1980) (applying Delaware law); *Ench v. Breslin*, 659 N.Y.S.2d 893 (N.Y. App. Div. 1997) (citing *Zion v. Kurtz*); *Herbert H. Lehman Coll. Found., Inc. v. Fernandez*, 739 N.Y.S.2d 375 (N.Y. App. Div. 2002); *Garson v. Garson*, 481 N.Y.S.2d 162 (N.Y. App. Div. 1984). In *Zion*, the shareholders of a close corporation incorporated under Delaware law agreed that the corporation would not engage in certain business activities without the consent of a minority shareholder. As the New York Court of Appeals noted, Delaware law generally provides that the board of directors shall manage a corporation. *Zion*, 50 N.Y.2d at 100. However, further provisions permit written shareholder agreements that "restrict or interfere with the discretion or powers of the board of directors." Del. Code. Ann. tit. 8, §§ 141, 354 (2005). Such agreements should be reflected in the company's certificate of incorporation, but where that is not the case, a court will still enforce an agreement as between the consenting shareholders. *See Zion*, 50 N.Y.2d at 101–02 (where all shareholders assented to agreement which limited rights of directors, defendant held estopped to rely on absence of amendment to the certificate of incorporation).

While *Zion* dealt with an issue of Delaware law, New York's Business Corporation Law also permits shareholder agreements in derogation of the powers of directors and has been similarly applied. N.Y. Bus. Corp. Law § 620(b); *Ench v. Breslin*, *supra*. In the instant case, Herbst and Brustowsky were Adorn's only shareholders, and while they were both to act as the company's sole directors, Herbst agreed that Brustowsky would have the controlling vote on decisions that would otherwise require the consent of both parties. Although the Agreement does not spell out whether this was to be achieved through direct action by the shareholders or through action taken at a

directors meeting, the intent to cede control is clear. In these circumstances, it was appropriate to estop Herbst from seeking to avoid the implementation of an agreement that provided Brustowsky with authority to cause Adorn to file the bankruptcy petition. As the bankruptcy court correctly concluded, to do so would promote "form over substance." (Order 10); *see Zion*, 50 N.Y.2d at 96; *Ench*, 659 N.Y.S.2d at 894–95.

Assuming, *arguendo*, that Brustowsky's authority under the shareholder agreement to cause Adorn to file a bankruptcy petition, was not properly implemented, Herbst's motion to dismiss the petition was still properly denied. As the bankruptcy court noted, there were unresolved issues as to whether Herbst had made unauthorized transfers to himself prior to the bankruptcy, which transfers might not be recoverable if the petition was dismissed. (Order 11). In such a situation, estoppel will also operate to preclude a shareholder of a close corporation who may have engaged in unauthorized preferential transfers from arguing that a petition was filed without compliance with all corporate formalities. *In re American Globus Corp.*, 195 B.R. 253, 266 (Bankr. S.D.N.Y. 1996).

## CONCLUSION

For the foregoing reasons, the Court finds that Herbst has not met the standard set forth in 28 U.S.C. § 1292(b), and declines to grant leave to appeal the Bankruptcy Court's December 14, 2004 order. The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: New York, New York
December 13, 2005

Richard J. Holwell
United States District Judge